1  LIONEL Z. GLANCY (134180)
   MARC L. GODINO (182689)
2  GLANCY BINKOW & GOLDBERG LLP
   1801 Avenue of the Stars, Suite 311
3  Los Angeles, California 90067
   Telephone: (310) 201-9150
4  Facsimile: (310) 201-9160
   Email: info@glancylaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA R. MCCOY, individually and on behalf of all other persons similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CAPITAL ONE BANK (USA), N.A. and CAPITAL ONE SERVICES, LLC, <br><br> Defendants. | CASE NO.: 3:10-cv-00185-L-CAB <br><br> **CLASS ACTION** <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Linda R. McCoy, individually and on behalf of all other persons similarly situated as defined below, brings this action against Defendants, Capital One Bank (USA), N.A. and Capital One Services, LLC (referred to collectively herein as "Capital One" or "Defendants" or the "Company"), and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff is among the many thousands of citizens nationwide, including California citizens, who were targeted by Capital One as part of its "subprime" credit card marketing programs, which included Capital One's sales of "Payment Protection" coverage (hereafter identified in this complaint as "Payment Protection").

2. Payment Protection is represented to the consumer to be a Capital One product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby "protect" the consumer's credit by insuring that timely payments are made on account balances so that the consumer does not incur additional fees, charges and penalties on credit card balances or sustain adverse credit reporting to the credit bureaus

3. Capital One is one of the largest issuers of credit cards in the country with millions of cardholders and over $13 billion in revenue in 2008. There are thousands of California Capital One cardholders who have paid for Payment Protection and receive no benefit.

4. The terms of the Payment Protection product are not adequately disclosed to consumers before the consumer accepts or is charged for the product, and Payment Protection coverage is so restricted in benefits, and processing claims under the coverage is made so difficult by Capital One, that the product is essentially worthless.

5. Capital One apparently makes no effort to determine if the Payment Protection coverage is available to the consumer before charging for the product. For example, numerous

1

senior citizens and retired California residents are charged for Payment Protection although they are excluded from receiving benefits by Capital One because they are not employed.

6. Despite the billions of dollars it earns from operations, Capital One increased its fee income by devising and marketing the Payment Protection product, a product which provides no benefits to thousands of California residents who are charged for the "service."

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interests and costs, and this matter is a class action in which Class members are citizens of a different state than that of defendant. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action, in part, arises under the constitution or laws of the United States.

8. This Court has jurisdiction over the Defendant named herein because Defendant is registered to do business in California and is registered with the California Secretary of State, or does sufficient business in California, has sufficient minimum contacts with California or otherwise intentionally avails itself of the markets within California through issuing credit cards, offering credit card products such as Payment Protection, and because Capital One sends monthly statements and sells products and services in California to California residents rendering the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court because plaintiff resides in California, and many of the proposed class members are citizens of California. Pursuant to 28 U.S.C. §1391(c), Capital One is deemed to reside in this District because it is subject to personal jurisdiction in this District and

AMENDED CLASS ACTION COMPLAINT

because Capital One has continuous and systemic contacts with this state by issuing credit cards, offering credit card products such as Payment Protection and because Capital One sends monthly statements and sells products and services in California to California residents.

10. To the extent there is any contractual or other impediment to pursue these claims on a class action basis, plaintiff specifically alleges, and will prove, if necessary, that any such bar is unconscionable, unfair and against public policy.

## THE PARTIES

11. Plaintiff Linda R. McCoy ("Plaintiff"), a California resident, received a credit card from Capital One that purported to provide Payment Protection features and benefits, and Plaintiff was charged for these features.

12. Defendant Capital One Bank (USA), N.A. was formerly a Virginia chartered limited purpose credit card company that became a national bank on or about March 1, 2008 and which has its principal place of business in McLean, Virginia.

13. Defendant Capital One Services, LLC has its principal place of business in McLean, Virginia. Upon information and belief, Capital One Services, LLC is the sales and marketing arm of Capital One Bank (USA), N.A.

14. At all times herein mentioned, Defendants, and each of them, were the agents, principals, employees, servants, partners, joint venturers, and representatives of each of the other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other co-Defendant.

15. The Defendants, and each of them, had knowledge of and agreed to the misconduct alleged herein. The Defendants conspired with each other and third parties (including but not

3

AMENDED CLASS ACTION COMPLAINT

limited to Stonebridge Benefit Services, Inc, a Delaware corporation with its principal place of business in Plano, Texas, which administers the Payment Protection program), to engage in the common course of misconduct alleged herein, or aided and abetted that common course of misconduct, for the purpose of enriching themselves at the public's expense, resulting in damage to Plaintiff and the Class.

## STATEMENT OF FACTS

16. Capital One markets a credit card product to California citizens that it calls Payment Protection. This product is typically offered to consumers who fall into a "subprime" credit category and therefore have low credit limits on their credit cards.

17. Capital One markets the Payment Protection product as a service that will safeguard the consumer's credit by making minimum credit card payments under certain highly restricted circumstances such as total disability.

18. In addition, there appears to be a "credit life" feature to this product, although this is buried in the fine print and is not described in the product information as credit life insurance. Upon information and belief, as part of the Payment Protection Plan, Capital One imposed charges for the credit life feature on each California and nationwide consumer, even though Capital One failed to obtain specific, affirmative written indication of his or her desire to receive the service after adequate disclosure of the cost or terms of coverage.

19. Capital One either provides Payment Protection to consumers through direct marketing and acceptance by the consumer of the product, or unilaterally imposes the Payment Protection feature on the consumer's credit card and requires the consumer to take action to cancel Payment Protection. In either case, Capital One fails to provide adequate information regarding

4

Payment Protection coverage and restrictions prior to selling the product, and then provides information about the product that is both misleading and obfuscatory.

20. As an example of the misleading and obfuscatory language, the Payment Protection product appears to be a financial product or service that is analogous to credit life or disability insurance, yet the marketing materials carefully avoid any use of the word "insurance." The marketing materials do, however, refer to making "claims." Further, Capital One did not obtain Class members' specific, affirmative written indication of their desire to obtain Payment Protection.

21. Payment Protection is a monthly charge that is assessed each month as $0.89 per $100 of the consumer's current credit card balance.

22. Although represented to the consumer as something in the nature of an insurance product, the Payment Protection product is virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the California consumer who attempts to secure payments from Capital One under this coverage.

23. This product is sold to consumers nationwide and in California without any consideration for the circumstances of the consumer or any reasonable investigation into facts that may cause the product to be worthless to the consumer. For instance, many senior citizens and retired persons are charged for this product although they are categorically excluded from Payment Protection payments should they become ill or incapacitated and unable to make credit card payments.

24. The Payment Protection product serves Capital One's interest in generating additional fee income, and has the added benefit to Capital One of lowering available credit to its subprime cardholders through the imposition of this additional fee.

5

25. Capital One also avoids including Payment Protection charges in the finance charge information that must be included in the "Schumer box" or Truth in Lending Act finance charge disclosures, although the Payment Protection fee is essentially an additional cost of credit to the subprime borrowers upon whom this charge is levied, and is the subject of interest charges by Capital One.

26. Capital One customarily sent form letters to customers, **after** they had been enrolled for Payment Protection, congratulating them for "enrolling this account in Payment Protection." The letter states the following:

> Payment Protection is ready when you need it. Developed by Capital One and administered by Consumer Membership Services, it pays the minimum monthly payment on your eligible balance in the event of involuntary unemployment or temporary disability. Plus:
> - Starting a claim is easy - simply call 1-888-527-6904
> - This peace of mind is only $0.89 per $100 of your monthly statement balance
> - The charge for Payment Protection is conveniently billed to your Capital One account each month
> - You pay nothing if your monthly statement balance is zero
> - You can cancel at any time
>
> The enclosed Payment Protection Member Benefits sheet contains additional important information, including how to file a Payment Protection claim. Remember, filing a claim will not adversely affect your credit rating or change the terms of your account.
> You've joined the more than 5 million Capital One cardholders who safeguard their credit with Payment Protection. As your trusted financial solutions partner, Capital One helps you protect what's in your wallet.

27. Attached to the letter is a page describing restrictions on the Payment Protection coverage in the form of "questions and answers." These restrictions are revealed to the consumer only **after** the coverage has already been billed:

> Q: What is the advantage of Payment Protection?
> A: It provides peace of mind in knowing that the minimum monthly payment on your eligible balance will be paid and helps safeguard your good credit rating with Capital One.
> Q: What if I am self-employed or retired?

| | |
|---|---|
| A: | You are eligible for the loss of life benefit; however, the other features are not available to you in your current employment status. |
| Q: | How soon after I enroll in Payment Protection can I file a claim and begin receiving payments? |
| A: | You are eligible for the loss of life benefit the day you enroll. However, you must be out of work for 30 consecutive days after enrolling in the product before an unemployment or disability claim can be accepted. |
| Q: | Once my claim is activated, how long will my benefits continue? |
| A: | Your benefits may continue for up to 12 months, or as long as you are eligible. Please refer to the Addendum for more details. |
| Q: | Does Payment Protection automatically cover all of my Capital One credit card accounts? |
| A: | No. |

28. On the reverse side of the "question and answer" page are additional terms and conditions. That page is self-described as an "Addendum to your Capital One Customer Agreement," although the Payment Protection product is, in fact, a new and separate transaction. This document is believed to be received by consumers at the same time as the "congratulations letter" and the "Q and A letter" discussed above. The so-called "Addendum" provides the following restrictions on the coverage:

> Inability to work
> If you become unable to work through (i) involuntary termination or (ii) temporary disability, and remain unemployed or unable to work due to a temporary disability for at least 30 consecutive days, PAYMENT PROTECTION will make benefit payments, subject to the limitations in this "Inability To Work" section, for up to 12 months while you remain unemployed or unable to work due to a temporary disability. To be eligible for benefit payments, you must be gainfully employed by someone other than yourself or another cardholder on your Account on a full-time basis in a non-seasonal occupation when the loss of employment occurs. Loss of employment cannot be a result of retirement.
> ... You must be regularly attended by a licensed physician who must certify your continued disability each month. If the primary and the secondary cardholder are both eligible at the same time for benefit payments due to their inability to work, only one such benefit payment will be made.
>
> Loss of Life; Total and Permanent Disability
> If you die or become totally and permanently disabled, PAYMENT PROTECTION will pay your eligible balance as of the date of death or total and permanent disability, up to the amount of the credit limit, or $10,000,

7

AMENDED CLASS ACTION COMPLAINT

whichever is less. Total and permanent disability means that you can no longer and will likely never be able to engage in any substantial activity required for wages, gain, or profit. Total and permanent disability as a result of self-inflicted injuries is not included in this benefit. If the deaths of the primary and the secondary cardholder occur as a result of the same event, only one death benefit will be paid.

29. In sum, the following restrictions on Payment Protection are imposed **after** acceptance of the coverage, in small print, in language that is not readily comprehensible to the average consumer:

- It does not apply to self-employed persons
- It does not apply to persons employed by a co-cardholder
- It does not apply to persons who are not employed "full time" although the Capital One documents do not define exactly what "full time" means
- It does not apply to persons in a seasonal occupation at the time of loss of employment
- It does not apply to unemployed persons
- It does not apply to retired persons
- It does not apply for the first 30 days of unemployment or disability
- It is limited to 12 months
- It requires monthly certification by a physician of continued disability
- It does not apply if injuries are self-inflicted

**Plaintiff's Experience with Payment Protection**

30. Plaintiff received Payment Protection from Capital One beginning in at least 2007.

31. Capital One did not inform Plaintiff of the terms of Payment Protection's coverage and restrictions before the product was sold to her, or that it would be the subject of interest charges by Capital One.

32. Plaintiff became unable to work in March 2009 due to a temporary disability. Later in 2009, she was laid off from her full time job. When Plaintiff attempted to take advantage of the

8

"benefits" provided by the Payment Protection, for which she had been paying for nearly one and a half years, she was "denied" any benefits.

33. As of July, 2009, after Plaintiff made multiple attempts to obtain her Payment Protection benefits, Plaintiff had a balance of $1260.13, on an account with a credit limit of $1,000. She was charged on her statement with fees as follows:

| | |
|---|---|
| Past Due Fee | $39.00 |
| Capital Pay Transaction Fee | $10.00 |
| Payment Protection | $11.97 |
| Overlimit Fee | $39.00 |
| Return Check Fee | $39.00 |

34. Upon information and belief, the documents regarding Payment Protection provided to Plaintiff are standard form documents that were provided in substantially the same form or format to all consumers who received the Payment Protection product from Capital One.

35. Upon information and belief, Plaintiff's experience with Capital One's marketing of Payment Protection and her experience with paying for Payment Protection is the result of Capital One's standard business practices and are typical of the experiences of all class members who paid for and received the Payment Protection product.

36. Upon information and belief, Capital One refused to provide Payment Protection coverage to numerous consumers, even for cardholders who met the above listed requirements.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as a representative of all others who are similarly situated and who fall within the following Class definition: All residents of the United States who (1) were solicited by Capital One by mail and/or telephone; (2) were marketed by Capital One for Payment Protection coverage for their credit card balance; and (3) paid for Payment Protection.

9

AMENDED CLASS ACTION COMPLAINT

38. This action also includes the following Subclass: All residents of the State of California (1) who were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for Payment Protection coverage for their credit card balance; and (3) who paid for Payment Protection.

39. This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

40. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons throughout California are members of the Class. The precise number of Class members and their addresses are unknown to Plaintiff, and can be ascertained through appropriate discovery. Moreover, should it become necessary, Class members may be notified of the pendency of this action by published and/or mailed notice.

41. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

42. Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual Class members.

43. The questions common to members of the Class are, *inter alia:*

    a. whether Defendants have engaged in deceptive and/or unfair acts and practices in violation of *California Business & Professions Code* §§17200 *et seq.*;

AMENDED CLASS ACTION COMPLAINT

b. whether Defendants have misled or are likely to deceive the proposed Class through material misrepresentations by failing to properly inform Capital One customers about Payment Protection;

c. Whether Defendants' common and uniform sales, billing and marketing scheme related to the Payment Protection product as alleged herein violates the Consumer Legal Remedies Act;

d. whether Defendants have received money that, in equity and good conscience, belongs to the proposed Class;

e. whether Plaintiff and the Class are entitled to recover damages and the proper measure of such damages;

f. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctions and restitution;

g. whether Plaintiff and the Class are entitled to declaratory relief sought herein;

h. the nature and extent of any other remedies to which proposed Class members are entitled as a result of Defendants' wrongful conduct.

i. Whether Defendants' practices violated TILA, 15 U.S.C. §1601, *et seq.*

44. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff and all members of the Class have sustained economic injury arising out of Defendants' violations of statutory law as alleged herein.

45. Plaintiff's claims are made in a representative capacity on behalf of members of the putative Class. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Class.

11

AMENDED CLASS ACTION COMPLAINT

46. Plaintiff is similarly situated in interest to all members of the proposed Class, and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of Class actions and consumer litigation. Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. Individual litigation presents the potential for inconsistent or contradictory judgments. A Class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
### Violation of Business & Professions Code §§17200, *et seq.*)

48. Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs, and further alleges as follows.

49. Plaintiff asserts this cause of action on behalf of herself and those similarly situated residing within the State of California.

50. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. *California Business & Professions Code* §17200, *et seq.* The Act also provides for injunctive relief and restitution for violations.

51.  Defendants' misleading marketing scheme related to the Payment Protection product violated the Consumer Legal Remedies Act, and is therefore unlawful pursuant to *California Business & Professions Code* §17200, *et seq.*

52.  Moreover, Defendants' deceptive marketing scheme related to the Payment Protection product constitutes unfair practices within the meaning of *California Business & Professions Code* §17200, *et seq.*

53.  By engaging in the above described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of *California Business & Professions Code* §17200, *et seq.*

54.  Defendants' acts and practices as described herein have deceived and/or are likely to deceive members of the consuming public.

55.  As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendants have been unjustly enriched by the profits from California consumers who pay for the Payment Protection product.

56.  Pursuant to *California Business & Professions Code* §§17203, Plaintiff seeks an order of this Court for Defendants to fully disclose the true nature of their misrepresentations. Plaintiff additionally requests an order requiring Defendants to disgorge their ill-gotten gains and award Plaintiff full restitution of all monies wrongfully acquired by Defendants by means of such acts of unfair competition, plus interest and attorneys' fees so as to restore any and all monies to Plaintiff and members of the proposed Class which were acquired and obtained by means of such unfair competition, misrepresentations and omissions, and which ill-gotten gains are still retained

by Defendants. Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

57. Defendants, through their acts of unlawful and unfair competition, have acquired money from Plaintiff and the members of the proposed Class. Thus, Plaintiff and the members of the proposed Class request that this Court restore this money to them, and enjoin Defendants from continuing to violate *California Business & Professions Code* §17200, *et seq.*, as discussed above.

58. Such conduct is ongoing and continues to this date. Plaintiff and the proposed Class members are therefore entitled to the relief described below.

59. Plaintiff seeks reasonable attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure, §1021.5

## SECOND CAUSE OF ACTION
### (Consumer Legal Remedies Act, California Civil Code §1750 et seq.)

60. Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs, and further alleges as follows.

61. At all relevant times, Plaintiff was a "consumer," as that term is defined in Civ. Code § 1761(d).

62. At all relevant times, the Payment Protection constituted "services," as that term is defined in Civ. Code § 1761(a).

63. At all relevant times, Defendants were "persons," as that term is defined in Civ. Code § 1761(c).

64. At all relevant times, Plaintiff's purchase of Payment Protection constituted a "transaction," as that term is defined in Civ. Code § 1761(e)

65. The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Payment Protection product to consumers. By offering the Payment

14

AMENDED CLASS ACTION COMPLAINT

Protection product to the public, Defendants withheld material terms from consumers prior to activation of Payment Protection charges, including the limitations, restrictions and exclusions associated with the product.

66. Defendants' practices, acts, policies, and course of conduct violated the California Consumer Legal Remedies Act, *California Civil Code* §1750 *et seq.*, (the "CLRA"), in that Defendants represented that Payment Protection had uses and benefits which it did not have in violation of §1770(a)(5) of the CLRA.

67. Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants represented that Payment Protection was of a particular standard, quality, or grade when it was of another in violation of §1770(a)(7) of the CLRA.

68. Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants advertised Payment Protection with intent not to sell the service as advertised in violation of §1770(a)(9) of the CLRA.

69. Plaintiff seeks damages and restitution of all monies received by Defendants as provided in *California Civil Code* §1780. Plaintiff is informed and believes that the amount of said damages and restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial when the same has been ascertained.

70. In compliance with the provisions of Civil Code §1782, Plaintiff has given written notice to Defendants of her intention to file a complaint for damages under Civil Code §1750, et seq. However, over 30 days have elapsed, and Defendants have failed to offer appropriate consideration or other remedy to all affected consumers as described in the written notice.

71. As a result of violation of the CLRA, Plaintiff and members of the proposed Class suffered damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

72. Plaintiff restates and realleges the preceding paragraphs of the Complaint as though fully set forth herein.

73. In seeking to sell credit cards to Plaintiff and members of putative Class, Defendants withheld material terms from consumers prior to activation of Payment Protection charges, including the numerous limitations, restrictions and exclusions associated with the product.

74. Defendants were unjustly enriched by charging Plaintiff and Class members for illusory benefits.

75. Defendants were unjustly enriched by charging Plaintiff and Class members who were unable by the terms of Payment Protection to collect their benefits.

76. As a result of Defendants' actions, by which they were unjustly enriched, Plaintiff and Class members suffered actual damages for which Defendants are liable. Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

## FOURTH CAUSE OF ACTION

### (Truth in Lending Act 15 U.S.C. §1601 et seq.)

77. Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs, and further alleges as follows.

78. Throughout the relevant time period, Defendants have sold the credit services at issue herein to individuals in this District, this State, and nationwide, engaging in significant interstate commerce.

AMENDED CLASS ACTION COMPLAINT

79. The purpose of the Truth in Lending Act of 1968, as amended, 15 U.S.C. 1601, 1666j and Regulation Z, 12 CFR part 226 ("TILA" and "Regulation Z"), is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. §1601(a); 12 C.F.R. 226.1(b).

80. TILA requires all solicitations for the extension of credit to clearly, conspicuously and in readily understood language disclose the terms of the commitment that the offeror, Capital One in this case, is extending to the consumer.

81. Congress delegated authority for the implementation of the Truth-in-Lending Act to the Federal Reserve Board ("Board"). 15 U.S.C. § 1604. The Board promulgated Regulation Z, which is the Truth-in-Lending Act's implementing regulation. 12 C.F.R. §§ 226 *et seq.*

82. Defendants' failure to disclose (in its applications, solicitations, billing statements or otherwise) that the premium for Payment Protection is a finance charge, that the minimum payment does not include all fees imposed, and that interest is charged on penalty fees and costs in connection with Payment Protection, violated sections 1605 and 1637 (a)(3), (a)(4) and (b)(4) of the Truth-in-Lending Act.

83. As a result of Defendants' violation of the Truth-in-Lending Act and Regulation Z, Defendants are liable to Plaintiff and the members of the Plaintiff Class, who seek damages, pursuant to 15 U.S.C. section 1640, as follows: a) actual damages resulting from Defendants' improper and illegal practices; b) the lesser of $500,000 or 1 percent of the net worth of Defendants; and c) costs and reasonable attorneys' fees.

AMENDED CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

1. An order certifying that the action may be maintained as a class action as defined herein;

2. A temporary, preliminary and/or permanent order:

    a. enjoining Defendants from pursuing the policies, acts and practices complained of herein;

    b. enjoining the above-described wrongful acts and practices of Defendants;

    c. providing restitution to all consumers who improperly incurred charges and/or expenses, as a result of Defendants' wrongdoing.

3. An order requiring disgorgement of Defendants' ill-gotten gains, payment of restitution to Plaintiff and all members of the proposed Class, and to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition;

4. For actual damages for injuries suffered by Plaintiff and the members of the proposed Class as a result of defendants' conduct;

5. For distribution of any moneys recovered on behalf of members of the proposed Class, via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of their wrongful conduct;

6. Reasonable attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure, §1021.5;

7. Costs of this lawsuit;

8. Pre- and post-judgment interest; and

9. Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 23, 2010

GLANCY BINKOW & GOLDBERG LLP

By: /s/ Marc L. Godino
Marc L. Godino

Lionel Z. Glancy
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

TAUS, CEBULASH & LANDAU, LLP
Kevin Landau
Brett Cebulash
1515 Broadway, 11th Floor
Telephone: (212) 520-4310

MURRAY, FRANK & SAILER LLP
Brian Murray
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP
James E. Miller
Patrick A. Klingman
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120

*Attorneys for Plaintiff*