Lionel Z. Glancy (134180)
Marc L. Godino (182689)
info@glancylaw.com
GLANCY BINKOW GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Linda R. McCoy*
*[Additional Counsel Appear on Signature Page]*

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA R. MCCOY, individually and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CAPITAL ONE BANK (USA), N.A. and CAPITAL ONE SERVICES, LLC,<br><br>        Defendants. | Case No. 3:10-cv-00185-L-CAB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      June 1, 2010<br>Time:     10:30 a.m.<br>Judge:   Hon. M. James Lorenz<br>Place:   Courtroom 14<br><br>Complaint filed: January 22, 2010 |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND ...............................................................................3

III.    ARGUMENT ..........................................................................................................5

        A.      Legal Standard ...........................................................................................5

        B.      The CLRA Applies to Payment Protection..................................................5

        C.      Plaintiff Has Adequately Alleged a UCL Claim.........................................8

                1.      Plaintiff Has Alleged that Defendants Engaged in "Unfair"
                        Business Practices ..........................................................................8

                2.      Plaintiff Has Alleged "Unlawful" Business Practices................................10

                3.      Plaintiff Has Standing to Pursue the UCL Because She Alleged that
                        She Was Injured "As a Result of" Defendants' Practices .........................11

                4.      Because Plaintiff is Not Pursuant UCL Claims Under the Fraud
                        Prong of UCL, There is no Heightened Pleading Standard for
                        Plaintiff's UCL Claim ....................................................................14

        D.      Defendants' Alternative Explanations for Their Conduct is Irrelevant to
                the Motion to Dismiss...............................................................................15

        E.      Plaintiff Has Stated A Claim for Unjust Enrichment.................................16

        F.      Plaintiff's TILA Claim is Timely .............................................................18

IV.     CONCLUSION.....................................................................................................19

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**CASES**

*Al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) ...............................................................5

*Amparan v. Plaza Home Mortgage, Inc.*,
    2008 WL 5245497  (N.D. Cal. 2008) ...........................................11, 19

*Aron v. U-Haul Co. of Cal.*,
    143 Cal. App. 4th 796 (2006) ...........................................................14

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ........................................................................5

*Augustine v. FIA Card Services, N.A.*,
    485 F. Supp. 2d 1172 (E.D. Ca. 2007) ...............................................8

*Ball v. FleetBoston Financial Corp.*,
    164 Cal. App. 4th 794 (2008) .............................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................5, 7, 15

*Berry v. American Express Publ'g, Inc.*,
    147 Cal. App. 4th 224 (2007) .............................................................6

*Berryman v. Merit Property Management, Inc.*,
    152 Cal. App. 4th 1544 (2007) .........................................................14

*Broughton v. Cigna Healthplans of California*,
    21 Cal. 4th 1066 (1999) ......................................................................6

*Buckland v. Threshold Enterprises, Ltd.*,
    155 Cal. App. 4th 798 (2007) ...........................................................12

*Chabner v. United Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) ..........................................................10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir.1990) .............................................................13

*Falk v. General Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................... 10-11

*FDIC. v. Dintino*,
    167 Cal. App. 4th 333 (Cal Ct. App. 2008) .....................................16

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2002) ...........................................................10

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Guiterrez v. Wells Fargo & Co.,*
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ...................................................................8

*Hall v. Time, Inc.,*
    158 Cal. App. 4th 847 (2008) ..........................................................................13

*Hauk v. JP Morgan Chase Bank USA,*
    552 F.3d 1114 (9th Cir. 2009) .........................................................................14

*Hernandez v. Hilltop Fin. Mortgage, Inc.,*
    No. 06-7401 SI, 2007 WL 3101250 (N.D. Cal. Oct. 22, 2007) ..........................7

*Hirsch v. Bank of Am.,*
    107 Cal. App. 4th 708 (Cal Ct. App. 2003) ...............................................16, 18

*Hunter v. General Motors Corp.,*
    No. B190809, 2007 WL 4100084 (Cal. Ct. App. Nov. 19, 2007) .....................13

*Huynh v. Chase Manhattan Bank,*
    465 F.3d 992 (9th Cir. 2006) ...........................................................................19

*In re First Alliance Mortgage Co.,*
    280 B.R. 246 (C.D. Cal. 2002) ........................................................................11

*In re Mattel, Inc.,*
    588 F. Supp.2d 1111 (C.D. Cal. 2008) ......................................................14, 15

*Jackson v. Grant,*
    890 F.2d 118 (9th Cir. 1989) ...........................................................................19

*Jefferson v. Chase Home Finance, LLC,*
    No. C06-6510 THE, 2007 WL 1302984 (N.D. Cal May 3, 2007) ......................7

*Kagan v. Gibraltar Savings & Loan Assoc.,*
    35 Cal. 3d 582 (1984) .................................................................................6-7

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .........................................................................15

*Knox v. Ameriquest Mortgage Co.,*
    No. C05-00240SC, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) ....................7

*Labrador v. Seattle Mortgage Co.,*
    No. 08-2270 SC, 2008 WL 4775239 (N.D. Cal. Oct. 29, 2008) ........................7

*Lozano v. AT&T Wireless Services, Inc.,*
    504 F.3d 718 (9th Cir. 2007) ............................................................................9

*Mauro v. General Motors Corp.,*
    No. CIV. S-07-892 FCD GGH, 2008 WL 2775004 (E.D. Cal. Jul. 15, 2008) .................17

*Motors, Inc. v. Times Mirror Co.,*
    102 Cal. App. 3d 735 (1980) ............................................................................9

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*NL Indus., Inc. v. Kaplan,*
    792 F.2d 896 (9th Cir.1986) ....................................................................5

*Nordberg v. Trilegiant Corp.,*
    445 F.Supp.2d 1082 (N.D. Cal. 2006) ...............................................15

*Nossen v. Hoy,*
    750 F. Supp. 740 (E.D. Va. 1990) ......................................................18

*Olszewski v. Scripps Health,*
    30 Cal.4th 798 , 135 Cal. Rptr. 2d 1, 69 P.3d 927 (2003) ...............10

*Pantoja v. Countrywide Home Loans, Inc.,*
    640 F. Supp. 2d 1177 (N.D. Cal. 2009) .............................................10

*Pastoria v. Nationwide Ins.,*
    112 Cal. App. 4th 1490 , 6 Cal.Rptr.3d 148 (2003)............................8

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC,*
    568 F.3d 374 (2d Cir. 2009)................................................................15

*Plascencia v. Lending 1st Mortgage,*
    583 F. Supp.2d 1090 (N.D. Cal. 2008) ..............................................11

*Podolsky v. First Healthcare Corp.,*
    50 Cal. App. 4th 632 (1996) ................................................................9

*Prata v. Superior Court,*
    91 Cal. App. 4th 1128 (2001) ...........................................................14

*Ralston v. Mortgage Investors Group, Inc.,*
    No. c 08-536 JF (RS), 2009 WL 688858 (N.D. Cal., Mar. 16, 2009) ..............................18

*Saunders v. Superior Ct.,*
    27 Cal. App. 4th 832 , 33 Cal. Rptr. 2d 438 (1994) ..........................10

*Smith v. State Farm Mut. Auto. Ins. Co.,*
    93 Cal. App. 4th 700 (2001) ................................................................9

*Somerville v. Stryker,*
    No. C 08-02443 JSW, 2009 WL 2901591 (N.D. Cal. 2009)............14

*Spear v. Cyprus,*
    No. CV 09-5860, 2010 WL 883834 (C.D. Cal. Mar. 5, 2010) ........14

*Spiegler v. Home Depot U.S.A, Inc,*
    552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...............................................9

*Steroid Hormone Product Cases,*
    181 Cal. App. 4th 145 (2010) ............................................................13

*Supermail Cargo, Inc. v. U.S.,*
    68 F.3d 1204 (9th Cir. 1995) .............................................................19

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Van Billiard v. Farrell Distributing Corp.*,
    No. 2:09-CV-78, 2009 WL 4729965 (D. Vt. Dec. 3 2009) .............................16

*Velazquez v. GMAC Mortgage Corp.*,
    605 F. Supp. 2d 1049 (C.D. Cal. 2008) .......................................................19

*Vess v. Ciba-Geigy Corp. U.S.A.*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................14

*Walsh v. Washington Mut. Bank*,
    CV 09-4387 RGK (ANx), Slip. Op. (C.D. Cal. Mar. 5, 2010) .......................16

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856 (2002) .........................................................................6

*Western Pac. R. Corp. v. Western Pac. R. Co.*,
    206 F.2d 495 (9th Cir. 1953) ......................................................................16

*Wilder v. JPMorgan Chase Bank N.A.*,
    Case No. SACV 09-0834 DOC (RNBx), Slip. Op. (Nov. 25, 2009).........16, 17

*Wolph v. Acer America Corp.*,
    No. C 09-01314 JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009).............15

*Yakas v. Chase Manhattan Bank, N.A.*,
    No. C 09-02964 WHA, 2010 WL 367475 (N.D. Cal. Jan. 25, 2010).........16, 17

**RULES AND STATUTES**

15 U.S.C. §1605 .......................................................................................................18

Federal Rules of Civil Procedure

        8(a) ..........................................................................................................5
        8(d)(2) ....................................................................................................17
        9(b) ........................................................................................................15
        12(b)(6) .........................................................................................5, 15, 19

California Business & Professions Code

        §17204....................................................................................................11
        §17200.................................................................................................8, 14

California Civil Code

        §1760 .......................................................................................................6
        §1770 (a) (5) ............................................................................................6
        §1770 (a)(7) ..............................................................................................6
        §1770 (a)(9) ..............................................................................................6
        §1770(a) ....................................................................................................6

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiff is among the many thousands of Capital One cardholders to whom Capital One pitched and sold its "Payment Protection" product. ¶1.[1] Defendants Capital One Bank (USA), N.A. and Capital One Services, LLC (collectively, "Capital One" or "Defendants") represent to Capital One cardholders that their Payment Protection product will pay minimum payments on credit cards for a period of time, and thereby "protect" the consumer's credit by insuring that timely and proper payments are made on account balances so that the consumer does not incur additional fees, charges and penalties on credit card balances or sustain adverse credit reporting to the credit bureaus. ¶2. Plaintiff alleges, however, that Defendants (1) sold the product and accepted cardholders into the Payment Protection program without regard for whether the cardholders even met eligibility requirements to receive benefits in the first instance, ¶¶5, 23; (2) failed to adequately disclose all restrictions and/or exclusions prior to selling the Payment Protection product, ¶¶4, 18-20, 22, 27-29; (3) subsequently provided consumers with information concerning the Payment Protection product that was misleading, contradictory and obfuscatory, ¶¶26-31; (4) failed to disclose Payment Protection fees as a "finance charge" on proposed class members' monthly account statements, ¶25; and (5) wrongfully denied Plaintiff benefits under Payment Protection after she became unable to work due to a temporary disability and was later laid off from her job despite the fact that she had been paying for Payment Protection for over a year and a half. ¶¶ 32-33.

Defendants' motion to dismiss (the "Motion") ignores or distorts the allegations in the Complaint and disregards the proper legal framework that is well-established for deciding motions to dismiss. Typical of their entire Motion to Dismiss, Defendants argue that Plaintiff's California Unfair Competition Claims ("UCL") are not viable because Defendants postulate that it is *possible* that Plaintiff

---

[1] Citations to "¶ __" refer to Plaintiff's February 10, 2010 Corrected Class Action Complaint (the "Complaint").

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

– who had paid Payment Protection fees for almost two years – was denied benefits by Capital One when she lost her job because she may not have been eligible at the time she was enrolled or perhaps because she failed to properly follow the claims procedure. But, Plaintiff – not Defendants – is entitled to reasonable inferences. Such arguments are fact issues not appropriately decided on a rule 12(b)(6) motion.

As discussed in more detail below, Defendants' Motion must be denied because, contrary to their arguments: (1) Defendants' deceptive practices in connection with Payment Protection services is actionable under the California Legal Remedies Act ("CLRA"); (2) Plaintiff has adequately alleged both illegal and unfair conduct under the UCL and has met all other applicable pleading standards; (3) California courts have recognized unjust enrichment claims as a cause of action and Plaintiff's claim is not barred as a matter of law by the existence of a contract between Capital One and her, because Plaintiff has specifically alleged that Payment Protection is a new transaction not covered by the cardholder agreement; and (4) Plaintiff's claims for TILA are timely.

Remarkably, Defendants fail to address the order denying their motion to dismiss entered in *Scott v. Capital One Bank Services, Inc.*, No. 8:08-cv-0132-T-33EAJ (M.D. Fla.) ("*Scott*"), an action currently pending on behalf of Florida citizens based on similar conduct alleged in this action. In *Scott*, Judge Moody, of the United States District Court for the Middle District of Florida, rejected Defendants' attempt to wish away certain of the plaintiffs' allegations and upheld the Florida plaintiffs' Florida Deceptive and Unfair Trade Practices Act and unjust enrichment claims.[2] California citizens who were subjected to Defendants' unfair "Payment Protection" practices should have redress under the UCL and CLRA, just as Florida residents do under Florida's consumer protection statutes.

---

[2] A copy of the *Scott* opinion is attached as Exhibit A to the Declaration of Marc L. Godino in Support of Opposition to Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("Godino Dec.")

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## II. RELEVANT BACKGROUND

Capital One markets a credit card product, called "Payment Protection" as a service that will safeguard the consumer's credit by making minimum credit card payments upon loss of employment or total disability. ¶¶2, 16-17. Capital One provides Payment Protection to consumers either through direct marketing and acceptance or by unilaterally imposing the product on consumers. ¶19. Either way, Capital One fails to provide adequate information regarding Payment Protection coverage and restrictions prior to selling the product. *Id.* The monthly charge for Payment Protection is $0.89 per $100 of the consumer's current credit card balance. ¶21.

At the time of enrollment, Capitol One does not care whether the cardholders it charges for Payment Protection are even eligible to receive benefits in the event that the cardholder becomes ill or loses her or his job and becomes unable to make credit card payments. ¶¶5, 23. Indeed, Capitol One charges senior citizens and retired persons for this product although they are categorically excluded from Payment Protection payments. *Id.*

It is only *after* Capitol One enrolls cardholders in Payment Protection that they provide *any* form of disclosure regarding exclusions and restrictions. ¶¶26-29. These disclosures regarding exclusions and restrictions, however, are inadequate because, in addition to being provided after enrollment, they must be gleaned from three contradictory form documents.

For example, Capital One sends a letter to cardholders congratulating them on obtaining Payment Protection and informing them that they can have "peace of mind" because "Payment Protection is ready when you need it;" "it pays the minimum monthly payment on your eligible balance in the event of involuntary unemployment or temporary disability" and that "Starting a claim is easy - simply call 1-888-527-6904." ¶26. On the reverse side is a Q & A that refers cardholders to another document, which Capital One self-describes as an "Addendum to your Capital One Customer Agreement" even though the Payment Protection product is in fact a new and separate transaction. ¶28. The "Addendum," is prolix,

not readily comprehensible to the average consumer and written in small print. ¶29. This document provides for the following restrictions on Payment Protection coverage:

- It does not apply to self-employed persons;

- It does not apply to persons employed by a co-cardholder;

- It does not apply to persons who are not employed "full time" although the Capital One documents do not define exactly what "full time" means;

- It does not apply to persons in a seasonal occupation at the time of loss of employment;

- It does not apply to persons who are unemployed at the time of enrollment;

- It does not apply to retired persons;

- It does not apply for the first 30 days of unemployment or disability;

- It is limited to 12 months;

- It requires monthly certification by a physician of continued disability; and

- It does not apply if injuries are self-inflicted;

¶29.

In 2007, Plaintiff received a credit card from Capital One that purported to provide Payment Protection for which Plaintiff was charged. ¶¶11, 30. Capital One did not inform Plaintiff of the terms of Payment Protection's coverage and restrictions before the product was sold to her. ¶31. Nor did Capital One ever obtain specific, affirmative written indication of her desire to receive the service after adequate disclosure of the cost or terms of the service. ¶18. Plaintiff became temporarily disabled in March, 2009 and was laid off from her full employment later in 2009. ¶32. When she attempted to take advantage of the "benefits" provided by Payment Protection, for which she had been paying for nearly two years, she was "denied" any benefits. *Id.* Capital One never made any the minimum pursuant to Payment Protection. As of July, 2009, after Plaintiff tried to obtain her Payment Protection benefits, Capital One not only charged her for Payment Protection, but also imposed late fees. ¶33.

III. **ARGUMENT**

A. **Legal Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege facts that are sufficiently plausible on their face to support the asserted causes of action. *Id.* at 570. In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Determining whether a claim is plausible "'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to prove that claim." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556) (upholding complaint post-*Iqbal*).

B. **The CLRA Applies to Payment Protection**

Contrary to Defendants' argument, Payment Protection is a "service" and their deceptive conduct in connection with their sales of Payment Protection is actionable under The CLRA. The CLRA prohibits certain actions undertaken "in a transaction intended to result or which results in the sale or lease of goods ***or services*** to any consumer."[3] Cal. Civ. Code §1770(a) (emphasis added). The

---

[3] Prohibited actions include (i) misrepresenting that services have characteristics, uses or benefits which they do not have (Cal. Civ. Code §1770 (a) (5)); (ii) misrepresenting that services are of a particular standard, quality, or grade (Cal. Civ. Code §1770 (a)(7)); and (iii) advertising services with intent not to sell them as advertised. Cal. Civ. Code §1770 (a)(9).

Legislature has instructed that the CLRA "shall be liberally construed and applied to promote its underlying purposes." Cal. Civ. Code §1760; *see also Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) (noting importance of this directive). The CLRA was adopted "to alleviate social and economic problems stemming from deceptive business practices." *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1077 (1999); *see also* Cal. Civ. Code §1760.

Defendants contend that *Berry v. American Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 227 (2007), and similarly decided cases cited by Defendants, preclude a claim against them. Those cases, which involved suits relating exclusively to the extension of credit, are inapposite. In *Berry*, plaintiff sued American Express alleging that the arbitration clause and class action waiver in the American Express cardholder agreement violated the CLRA. *Id.* The *Berry* court rejected the plaintiff's claim because only the terms of credit were at issue.

Significantly, the *Berry* court noted that conduct relating to services that are part of a credit transaction are still actionable under the CLRA. *Id.* at 230 ("[a] review of the CLRA's legislative history, however, does not support the notion that credit, *separate and apart from a specific purchase or lease of a good or service*, is covered under the act.") (emphasis in original). Accordingly, cases following *Berry* do not provide absolute immunity to financial service companies for claims brought under the CLRA as Defendants would have it. Indeed, the California Supreme Court and numerous district courts in the Central District have found, consistent with the holding in *Berry,* that claims are actionable under the CLRA where, as here, plaintiffs allege misconduct separate and apart from the extension of credit -- *i.e.,* the Payment Protection service. *Kagan v. Gibraltar Savings & Loan Assoc.*, 35 Cal. 3d 582, 596-97 (1984) (applying the CLRA to claims regarding management fees in connection with individual retirement accounts); *Labrador v. Seattle Mortgage Co.*, No. 08-2270 SC, 2008 WL 4775239, at *5 (N.D. Cal. Oct. 29, 2008) (concluding that mortgage loans are covered under the CLRA since defendant provided various services in conjunction with the mortgage); *Hernandez v. Hilltop Fin.*

*Mortgage, Inc.*, No. 06-7401 SI, 2007 WL 3101250, at *6 (N.D. Cal. Oct. 22, 2007) (stating "unlike *Berry*, the situation in the present case involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan"); *Jefferson v. Chase Home Finance, LLC*, No. C06-6510 THE*,* 2007 WL 1302984, at *2-*3 (N.D. Cal May 3, 2007) (holding the CLRA applies to financial services connected with the financial service of mortgages)*; Knox v. Ameriquest Mortgage Co.*, No. C05-00240SC, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) (finding that in the context of predatory lending allegations, "California courts generally find financial transactions to be subject to the CLRA").[4]

Here, like the cases cited above, Plaintiff contends Defendants collected untold millions of dollars in fees, not from the issuance of credit, but from the sales of a service – albeit a bogus one – through its predatory Payment Protection Plan. The Payment Protection fee paid by the enrollee does not appear to be required for Capital One credit card holders to have a credit card account; rather it is purportedly for cardholders' "peace of mind" in the event they lose their job or become ill because "Payment Protection is ready when you need it" to pay minimum payments (only to not pay it when cardholders, such as Plaintiff become disabled and are later laid off). ¶¶26, 32. The fact that Defendants have engaged a third party – Stonebridge Benefit Services, Inc. – to assist them in implementing

_____

[4] Contrary to Defendants' assertion (Motion at 5), Plaintiff does not claim that Payment Protection is an "insurance" product. Rather, Plaintiff clearly alleges that Defendants "avoid any use of the word `insurance.'" ¶20. There is no doubt that Defendants carefully avoided the use of the word "insurance" since that may have caused the "product" to be regulated by the California Department of Insurance. Moreover, Plaintiff pled that although Payment Protection is misleadingly described as an "Addendum to your Capital One Customer Agreement," it is indeed an entirely new and separate transaction. ¶28.

Payment Protection service underscores the point that Payment Protection is separate from extension of credit. ¶15.[5]

In sum, Defendants' conduct in connection with Payment Protection is not issuance of credit, but rather a "service" that is actionable under the CLRA.

**C.  <u>Plaintiff Has Adequately Alleged a UCL Claim</u>**

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code §17200. Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496, 6 Cal.Rptr.3d 148 (2003). As discussed below, Plaintiff has adequately alleged that Defendants' conduct in connection with the Payment Protection Program is both "unlawful" and "unfair," although either one alone would be sufficient to state a claim. Contrary to Defendants' assertions, there is no heightened pleading requirement for such UCL claims and even if there was, Plaintiff can satisfy that burden.

**1.  Plaintiff Has Alleged that Defendants Engaged in "Unfair" Business Practices**

The complaint alleges facts giving rise to Defendants' liability under the "unfair business practice" prong of the UCL. Cal. Bus. & Prof. Code ¶17200. Unfair practices are those that "offend[ ] an established public policy" or are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996) (internal quotations and citations omitted).

---

[5]   *Guiterrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009), *Ball v. FleetBoston Financial Corp.*, 164 Cal. App. 4th 794 (2008) and *Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172 (E.D. Ca. 2007) are distinguishable since, unlike here, the plaintiffs' complaints contained allegations about the conduct in connection with issuance of credit, unlike a tangential service such as Payment Protection.

In the consumer action context, the test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. *Spiegler v. Home Depot U.S.A, Inc*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008); *Smith v. State Farm Mut. Auto. Ins*. Co., 93 Cal. App. 4th 700, 718 (2001). In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (endorsing balancing test in determining unfairness prong of the UCL).

The facts here demonstrate that the harm inflicted upon Plaintiff and the putative class caused by Defendants' conduct far outweighs any justifications Defendants may claim. Plaintiff paints a compelling, albeit uncomplicated, story: in a predatory manner, Defendants aggressively market their "Payment Protection" product to their "subprime" credit card market, promising that it will "protect" the consumer's credit by ensuring that minimum credit card payments are made in the event of the loss of a job or total medical disability. ¶¶1-3, 16-17.[6] Capital One even sells Payment Protection to consumers, including senior citizens, retirees and the unemployed, without regard to whether these individuals are even eligible for coverage in the first instance. ¶¶5, 23. Cardholders are "welcomed" into the program, told that they can now have "peace of mind" and are billed by Capital One monthly at $0.89 per $100 of the consumer's current credit card balance. ¶26. However, Defendants (1) devised significant, built-in restrictions on the availability of this "protection," which are inadequately revealed only after the consumer purchases the product and (2) impose bureaucratic and administrative hurdles when customers

---

[6] According to Defendants' own standardized letters, distributed to consumers only after they have purchased or have been signed-up for the product, Payment Protection "pays the minimum monthly payment on your eligible balance in the event of involuntary unemployment or temporary disability" and "provides peace of mind in knowing that the minimum monthly payment on your eligible balance will be paid and helps safeguard your good credit rating with Capital One." ¶¶32, 33.

9

seek to use Payment Protection. ¶¶4, 22, 29, 31. These practices make Payment Protection essentially worthless. ¶¶4, 22. Indeed, like Plaintiff, who only sought to use Payment Protection after she became temporarily disabled and lost her job (and was subsequently denied coverage), ¶32, it is likely that many consumers only become aware of the product's lack of value restrictions when they seek to use it.

These allegations reflect an unfair practice, in that, unbeknownst to the reasonable consumer, having Payment Protection does not mean that credit card payments will be made in the event of unemployment or disability. There is no countervailing utility in withholding this type of information from cardholders until after they are enrolled – and then disclosing such information inadequately. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) (court must weigh the utility of the defendant's conduct against the gravity of the harm to the victim); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 852 (2002) (same). Thus, the court should deny the Motion since Plaintiff has properly pled "unfair" business practices under the UCL.

### 2. Plaintiff Has Alleged "Unlawful" Business Practices

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838-39, 33 Cal. Rptr. 2d 438 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827, 135 Cal. Rptr. 2d 1, 69 P.3d 927 (2003).

As established above, Defendants' conduct in connection with Payment Protection violates the CLRA. Violations of CLRA claims can form a basis for UCL claims. *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) (allegations of buyers of trucks and sport utility vehicles with allegedly defective speedometers, that manufacturer committed unlawful practices by

violating California Consumers Legal Remedies Act (CLRA), were sufficient to state an unlawful practices claim under California's Unfair Competition Law (UCL), since buyers had successfully plead CLRA claim.)

In addition, the Complaint also details, primarily through standard marketing techniques and form letters, Defendants' violations of TILA. ¶¶18, 20, 25, 34. California courts have previously found that TILA violations are a basis for a UCL claim. *See Plascencia v. Lending 1st Mortgage*, 583 F. Supp.2d 1090, 1099 (N.D. Cal. 2008); *Amparan v. Plaza Home Mortgage, Inc.*, 2008 WL 5245497 *11 (N.D. Cal. 2008); *In re First Alliance Mortgage Co.*, 280 B.R. 246, 250-51 (C.D. Cal. 2002). Defendants never obtained cardholders express written assent to be charged for Payment Protection after full disclosure of the terms and failed to disclose Payment Protection as a "finance charge" as required under TILA. ¶¶18, 20. Importantly, Defendants do not dispute that Plaintiff has adequately pled her TILA violations.

### 3. Plaintiff Has Standing to Pursue the UCL Because She Alleged that She Was Injured "As a Result of" Defendants' Practices

To have standing under the UCL, a plaintiff must suffer "an injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §17204. Plaintiff has adequately pled both prongs. She pled that it was not until <u>after</u> she signed up for the Payment Protection program that she received additional information about coverage limitations, but such information was all but useless because it was "in small print, in language that is not readily comprehensible to the average consumer." ¶29. She has pled that Defendants assessed her with a monthly charge of $0.89 per $100 of her credit card balance for credit protection. ¶¶21, 33. She further pled that the benefits were essentially worthless because of the restrictions and administrative hurdles imposed by Defendants and, in fact, "[w]hen [she] attempted to take advantage of the 'benefits' provided by the Payment Protection, for which she had been paying for nearly one and a half years, she was `denied' benefits." ¶¶4, 31-32. Accordingly, because Plaintiff alleged that she paid for benefits that were worthless and that she did not

receive, she suffered both an "injury in fact" and "lost money or property as a result of such unfair competition."[7]

Nevertheless, Defendants argue that that Plaintiff cannot establish a causal link between the alleged misconduct and the injury because she has not alleged that she "was deceived or misled by Capital One or that Capital One acted in a manner that was inconsistent with the disclosures made in the Welcome Kit." Motion at 9. First, the argument is a red herring because the "disclosures" were sent to Plaintiff and proposed class members well <u>after</u> they <u>were</u> <u>already</u> enrolled in Payment Protection. Plaintiff and proposed class members had no reason to expect that while they could continue to pay for Payment Protection, they would be unable to avail themselves of the program's benefits (because of Defendants' belatedly and misleadingly disclosed restrictions and imposition of unfair administrative and bureaucratic hurdles) and their continued payments would be utterly wasted.[8]

---

[7]     Defendants' argue that "plaintiff's allegations are general and on their face relate to the experience of others. As plaintiff has not identified a single act of unfair competition that had an effect on her, she has failed to plead her own standing and may not bring a UCL claim for this reason alone." Motion at 7. Defendants simply ignore the allegation in the complaint cited above. Moreover, Defendants' citation in support of their argument to *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 816 (2007), is distinguishable. In *Buckland*, the Plaintiff was an individual consumer who submitted a declaration expressly stating that she was not claiming any personal injuries as a result of using the product, that she was bringing her claim on behalf of the consumer public and that she purchased the product through her attorney solely for the purpose of obtaining standing. *Id.* The court found that the plaintiff's purchase of the cosmetics product alone was not sufficient to constitute an injury in fact under the UCL. *Id.* at 816. *Buckland* expressly limited its holding "to the special facts presented" therein "which involve an individual who voluntarily buys a defendant's product to pursue a UCL action in the public interest against the defendant." *Id.* at 818 n.11.

In contrast to *Buckland*, Plaintiff here did not initiate the instant action as a disinterested consumer on behalf of the general public. Instead, Plaintiff clearly alleges that the Payment Protection was purchased in at least 2007, and she was not aware of any claim against Defendant at the time she purchased the Payment Protection. It was only after Plaintiff was denied any benefits provided by the Payment Protection that Plaintiff became aware of a potential claim against Defendant. Moreover, unlike the plaintiff in *Buckland*, Plaintiff was actually harmed by the Defendant's misconduct – she bought and paid for a product she alleges was essentially worthless. As such, Plaintiff clearly can point to a distinct and palpable injury other than the cost of the product alone.

[8]     *Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008), cited by Defendants, is distinguishable. There, defendant booksellers offered a free trial period to customers, but sent invoices prior to the expiration of the trial period. *Id.* at 857. The court found that plaintiff failed to allege injury because plaintiff did not allege that, but for the invoice, he would have returned the book after the trial period. *Id.* Unlike the

Additionally, Defendants' conduct was, in fact, inconsistent with the letter in the "Welcome Kit" which conveyed to reasonable cardholders that they were enrolled in Payment Protection and could have "peace of mind" because "[Payment Protection] pays the minimum monthly payment on your eligible balance in the event of involuntary unemployment or temporary disability." Contrary to the representations in this letter, cardholders were not necessarily protected, although they continued to pay for Payment Protection.

Accordingly, because Plaintiff and the class would not have purchased Payment Protection had they been informed that it would be useless, Defendants' misrepresentations necessarily caused Plaintiff's injury. *See Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 156 (2010) (Court of Appeals reversed trial court's denial of class certification, finding injury adequately pled when plaintiff alleged that he would not have purchased bodybuilding supplements had he known they contained illegal substances); *Hunter v. General Motors Corp.*, No. B190809, 2007 WL 4100084, at *9-*12 (Cal. Ct. App. Nov. 19, 2007) (Court of Appeals reversed trial court's dismissal of UCL claims, because plaintiffs alleged that they would not have purchased unsafe vehicles but for the representation that the vehicles were safe).

**4**.     **Because Plaintiff is Not Pursuing UCL Claims Under the Fraud Prong of UCL, There is No Heightened Pleading Standard for Plaintiff's UCL Claim**

Defendants also incorrectly argue that Plaintiff has failed to satisfy her technical pleading requirement since her claims are grounded in fraud and therefore must be plead with heightened

---

plaintiff in *Hall*, Plaintiff here has demonstrated that she would not have purchased and continued to make payments on Payment Protection absent Defendants' disclosure practices. This is self-evident from the fact that she purchased a program that she alleges was "worthless" and, in fact, was useless to her. However, if the action is dismissed for failure to plead this specifically, Plaintiff would seek to plead this in an amended complaint. When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir.1990).

particularity. Motion at 6. Plaintiff's claims are not grounded in fraud. Rather, Plaintiff's UCL claim only contains allegations under the "unlawful" and "unfair practices" prongs of the statute. ¶¶51-52. *Spear v. Cyprus*, No. CV 09-5860, 2010 WL 883834, at *3 (C.D. Cal. Mar. 5, 2010) (*citing Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)) ("where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.").

Even assuming, *arguendo*, that Plaintiff's case is based on the fraudulent prong of the UCL, which Plaintiff does not concede it is, "Pleading a claim under the fraudulent prong of Section 17200 is not the same as pleading common law fraud; '[S]ection 17200 does not require a plaintiff to plead all of the elements of fraud.'" *Somerville v. Stryker*, No. C 08-02443 JSW, 2009 WL 2901591, at * 3 (N.D. Cal. 2009), *quoting In re Mattel, Inc.*, 588 F. Supp.2d 1111, 1112 (C.D. Cal. 2008). The fraud contemplated by the UCL bears little resemblance to common-law fraud. *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1124 (9th Cir. 2009); *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1146 (2001). Unlike common law fraud, a UCL violation can be shown without allegations of actual deception, reasonable reliance and damage. *Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1556 (2007). It is only necessary to show that members of the public are likely to be deceived. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796 (2006); *Prata*, 91 Cal. App. 4th at 1146.

Accordingly, even claims brought under the fraudulent prong of the UCL are not required to be pled with particularity if, as here, the claims do not seek to establish typical common law fraud elements such as intent to deceive or an overarching scheme to defraud. *Somerville*, 2009 WL 2901591, at * 3; *In re Mattel, Inc.*, 588 F. Supp.2d at 1118. Here, as noted, Plaintiff's UCL claim is based upon Defendants' omission of the limitations to Payment Protection, which are not disclosed until after enrollment in Payment Protection (and even then neither properly nor fully disclosed) – not common law

1    fraud.[9]

2        **D.    Defendants' Alternative Explanations for Their Conduct is Irrelevant to the Motion
3            to Dismiss**

4        Defendants suggest that there are "obvious alternative explanations" for Plaintiff's loss that are

5    just as plausible as a violation of the UCL, and therefore Plaintiff has failed to adequately plead a UCL

6    claim.  For example, Defendants surmise that Plaintiff may not have been eligible or failed to follow the

7    applicable claims procedure.  Motion at 9 n.2.  Defendants here seek to convert the analysis of whether

8    the pleadings state a claim into a *de facto* analysis that a Court conducts on a motion for summary

9    judgment.  Simply put, Defendants' suggestion that there are "alternative explanations" for their denial

10   of Plaintiff's claim for Payment Protection benefits is irrelevant to the Court's analysis on a Rule

11   12(b)(6) motion, which calls for the Court to analyze the sufficiency of Plaintiff's Complaint and

12   whether Plaintiff alleged sufficient facts in support of a plausible claim.  *Twombly*, 550 U.S. at 570; *see*

13   *also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC*, 568 F.3d 374, 382

14   (2d Cir. 2009) ("Whether the Plaintiffs will be able to prove the allegations set forth in the complaint is

15   quite another matter.  Since we are at the pleading stage, we need not resolve this question."); *Van*

16   *Billiard v. Farrell Distributing Corp.*, No. 2:09-CV-78, 2009 WL 4729965, at *5 (D. Vt. Dec. 3, 2009)

17   ("Defendants emphasize that there is an 'obvious alternative explanation' for the Plan's decrease in

18   value.  However, at this early stage of litigation, a plaintiff need only articulate a plausible claim.").

19

20

21   _____

22   [9]      Plaintiff's CLRA claim also properly contains allegations of misrepresentations pursuant to such
     sections of the CLRA.  ¶¶66-68.  *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1097 (N.D. Cal.
23   2006) (holding that Rule 9(b) was inapplicable to a claim under California's Consumer Legal Remedies
     Act because it "is not a fraud statute" and forcing plaintiffs to "prove more than the statute itself requires
24   would undercut the intent of the legislature in creating a remedy separate and apart from common-law
     fraud").  Accordingly, Plaintiff's claim does not sound in fraud and 9(b) is inapplicable.

25       Defendants' citation to *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) is
     inapposite since plaintiff there alleged that defendant engaged in a course of fraudulent conduct.  Also,
26   *Wolph v. Acer America Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *5 (N.D. Cal. Sept. 14,
     2009) acknowledged that "particularity requirements of Rule 9(b) must be read in harmony with the
27   requirement to make out a 'short and plain' statement of the claim."

28

### E.    <u>Plaintiff Has Stated a Claim for Unjust Enrichment</u>

Contrary to Defendants' assertions, many California state and federal courts have upheld unjust enrichment as a valid cause of action.  *See Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d 495, 498 (9th Cir. 1953) ("it is of course true that the California courts, in common with authorities generally, recognize a cause of action based on unjust enrichment"); *Walsh v. Washington Mut. Bank*, CV 09-4387 RGK (ANx), Slip. Op. at *5 (C.D. Cal. Mar. 5, 2010) (upholding unjust enrichment claim) (a copy of this order is attached as Ex. B to the Godino Dec.); *Yakas v. Chase Manhattan Bank, N.A.*, No. C. 09-02964 WHA, 2010 WL 367475, at *6-*7 (N.D. Cal. Jan. 25, 2010) (same); *Wilder v. JPMorgan Chase Bank N.A.*, Case No. SACV 09-0834 DOC (RNBx), Slip. Op. at *6 (Nov. 25, 2009) (same and finding that "the weight of authority indicates that California law recognizes a cause of action for unjust enrichment/restitution") (a copy of this order is attached as Ex. C to the Godino Dec.); *FDIC. v. Dintino*, 167 Cal. App. 4th 333, 346 (Cal Ct. App. 2008) (upholding unjust enrichment claim); *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (Cal Ct. App. 2003) (same).

Defendants' argument that Plaintiff's claim for unjust enrichment is foreclosed – as a matter of law – is premised on the faulty argument that a contract exists between the parties relating to Payment Protection.  However, Plaintiff has alleged that "Payment Protection is, in fact, a new and separate transaction" and not part of the Capital One Customer Agreement, and that there was no disclosure of the terms whatsoever until after cardholders were enrolled. ¶28.  Defendants' attempt to mischaracterize similar allegations relating to the unjust enrichment claim was correctly rejected by the Florida court in *Scott*:

> However, despite Capital One's characterization of the Payment Protection restrictions and conditions as an "Addendum" to the "Customer Agreement," Plaintiffs have alleged they were never given the opportunity to review or accept the restrictions prior to enrollment in the program.  Moreover, Plaintiffs allege Capital One unilaterally enrolled consumers in the Payment Protection program without their consent.  Taking Plaintiffs allegations as true, there was no "meeting of the minds," and thus no express contract regarding the Payment Protection program.

*Id.* at 7.

Moreover, even if a valid contract did exist, Defendants ignore Plaintiff's right to plead claims, even contradictory ones, in the alternative. Pursuant to Federal Rule of Civil Procedure 8(d)(2), a party is permitted to plead alternative claims. "While ultimately [a] plaintiff may not recover damages under both theories, that a valid contract may exist between the parties is no bar to pleading, in the alternative, a claim of unjust enrichment." *Mauro v. General Motors Corp.*, No. CIV. S-07-892 FCD GGH, 2008 WL 2775004, at *6 (E.D. Cal. Jul. 15, 2008); *see also Wilder*, Slip Op. at *7 (upholding unjust enrichment claims pled in the alternative, finding that "[i]t would be inappropriate to dismiss Plaintiff's claim before the Court has held that an express, enforceable contract governed the subject matter for which Plaintiff seeks restitution"); *Yakas*, 2010 WL 367475, at *6-*7 ("if plaintiff prevails in her interpretation of the HELOC agreement . . . the question of remedies will arise, and the Court may conceivably find that defendant was unjustly enriched" and therefore at the pleading stage, Judge Alsop "was unwilling to categorically exclude the possibility that unjust enrichment will turn out to be an appropriate remedy.")

Finally, Defendants' argument regarding the supposed insufficiency of Plaintiff's factual allegations supporting her "unjust enrichment" claim should be rejected. The Complaint alleges that Plaintiff made payments to Defendants for Payment Protection for over a year and a half years, only to be denied coverage when she needed it. ¶¶32, 73. Under these circumstances, it would be unjust to allow Defendants to retain the payments. Accordingly, these allegations state a claim for unjust enrichment. *See Hirsch*, 107 Cal. App. 4th at 722 ("[a] person is enriched if he or she receives a benefit at another's expense").[10]

---

[10] Without conceding the applicability of Virginia law on any of her claims, Plaintiff notes that the elements of unjust enrichment under that state's law are substantially similar. *See*, *e.g., Nossen v. Hoy*, 750 F. Supp. 740, 744-745 (E.D. Va. 1990) (unjust enrichment generally requires that a benefit be conferred on the defendant by the plaintiff; defendant's knowledge that the benefit has been conferred;

**F.**     **Plaintiff's TILA Claim is Timely**

Noticeably absent from Defendants' brief is any argument that Plaintiff has not stated a valid

TILA claim.  Instead, Defendants contend that the TILA claims are untimely because they were not

brought within one year of the "occurrence of the violation" which Defendants claim occurred in 2007,

when Plaintiff began paying for Payment Protection.  Defendants claim that "Plaintiff makes no factual

allegations as to misrepresentations in Capitol One's 'billing statements' and therefore cannot be the

basis for the TILA claim."  Defendants completely ignore the fact that Plaintiff alleged that they failed

"to disclose (in its applications, solicitations, *billing statement* or otherwise) that the premium for

Payment Protection is a finance charge . . .." ¶55 (emphasis added).  Defendants were required to do this

because they failed to obtain specific, affirmative written indication of Plaintiff's desire to receive the

service after full and adequate disclosure of the cost and terms of the service. ¶¶20, 55 (citing 15 U.S.C.

§1605).

Even putting aside the issue of the starting point for the statue of limitations, Plaintiff's claims

cannot be dismissed at this stage because equitable tolling applies here.  Equitable tolling applies in

situations where, such as here, the transaction documents "were so confusing as to obfuscate the true

terms" or in which "a reasonable person in [Plaintiff's] position might not have understood the true

terms . . . based upon the documents provided".  *Ralston v. Mortgage Investors Group, Inc.*, No. c 08-

536 JF (RS), 2009 WL 688858, at *3 (N.D. Cal., Mar. 16, 2009) (internal citations omitted).  Here,

Defendants continue to conceal that Payment Protection is a "finance charge" and thus a reasonable

person in Plaintiff's position would not be able to discern that such fees were "finance charges".

"'TILA has been liberally construed' by the Ninth Circuit."  *Velazquez v. GMAC Mortgage

Corp.*, 605 F. Supp. 2d 1049, 1058 (C.D. Cal. 2008) (citing *Jackson v. Grant*, 890 F.2d 118, 120 (9th

_____

and "acceptance or retention of the benefit by the defendant in circumstances that render it inequitable
for the defendant to retain the benefit without paying for its value") (citations omitted).

Cir. 1989)).  Numerous courts have acknowledged that it is inappropriate to resolve equitable tolling issues at the motion to dismiss stage.  *Id.* at 1061 (citing *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206-07 (9th Cir. 1995)) ("The Ninth Circuit has cautioned against resolving equitable tolling issues on a 12(b)(6) motion unless 'the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled'").  Courts have held that the issue of equitable tolling is "better fit for resolution on a Motion for Summary Judgment, where a more thorough consideration of disclosure, judicially noticeable documents, and contemporaneous events is appropriate." *Id.  See also Amparan*, 2008 WL 5245497, at *4 (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006)) ("'Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue'").

Accordingly, Plaintiff submits that her TILA claim is timely and, Defendants' statute of limitations argument should be denied.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

Dated: May 17, 2010                     GLANCY BINKOW & GOLDBERG LLP


                                        By:    *s/Marc L. Godino*
                                               Lionel Z. Glancy
                                               Marc L. Godino
                                        1801 Avenue of the Stars, Suite 311
                                        Los Angeles, CA 90067
                                        Telephone:    (310) 201-9150
                                        Facsimile:    (310) 201-9160
                                        E-mail: info@glancylaw.com

TAUS, CEBULASH & LANDAU, LLP
Kevin Landau
Brett Cebulash
1515 Broadway, 11th Floor
Telephone: (212) 520-4310

MURRAY, FRANK & SAILER LLP
Brian Murray
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP
James E. Miller
Patrick A. Klingman
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile:  (860) 526-1120

*Attorneys for Plaintiffs*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2

**PROOF OF SERVICE VIA ELECTRONIC POSTING**
**PURSUANT TO SOUTHERN DISTRICT OF CALIFORNIA LOCAL RULES**
**AND ECF FILING POLICIES AND PROCEDURES**

3
4

I, the undersigned, say:

5
6

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

7

On May 17, 2010, I caused to be served the following documents:

8
9

**1.** **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

10
11

**2.** **DECLARATION OF MARC L. GODINO IN SUPPORT OF OPPOSITION TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

12
13

By posting this document to the ECF Website of the United States District Court for the Southern District of California, for receipt electronically pursuant to the attached ECF Service List.

14
15

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 17, 2010, at Los Angeles, California.

16
17

*S/Marc L. Godino*
Marc L. Godino

18
19
20
21
22
23
24
25
26
27
28

# Mailing Information for a Case 3:10-cv-00185-L -CAB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lionel Z Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Marc L Godino**
  mgodino@glancylaw.com

- **Crystal S. McKellar**
  cmckellar@mofo.com,rbanks@mofo.com

- **Andy Sohrn**
  asohrn@glancylaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)